**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

PARALLAX POWER SUPPLY LLC,                )
                                          )
            Plaintiff,                    )
                                          )
v.                                        )        Cause No.: 1:04-CV-118
                                          )
VICTORY COMPONENTS, INC.,                 )
                                          )
            Defendant.                    )

**MEMORANDUM OF OPINION AND ORDER**

        This matter is before the court on Plaintiff Parallax Power Supply's ("Parallax") Motion

for Summary Judgment, filed on February 18, 2005, and Parallax's Motion to Strike Defendant's

Answer, filed on May 24, 2005.  In addition, on May 20, 2005, Parallax filed a supplemental

brief in support of its motion for summary judgment.[1]  Defendant Victory Components'

("Victory") response to the motion for summary judgment was due on March 14, 2005, but no

such response was filed.  By way of an Order issued on May 26, 2005, this court directed

Victory to file any response to any of Parallax's pleadings on or before June 26, 2005.  As of the

date of entry of this Order, Victory has failed to file a response, a request for additional time in

which to do so, or any other pleading with regard to the pending motions.[2]

---

        [1]  In its supplemental brief, Parallax included, for the first time, its motion to strike
Victory's answer.  As this "motion" was incorporated into a supplemental brief, the Clerk of the
Court re-docketed the entry on May 24, 2005, to reflect that a second motion had been filed by
Parallax (i.e., a motion in addition to the motion for summary judgment).

        [2]  On February 23, 2005, Parallax filed a Motion to Compel, seeking a court order
directing Victory to provide Parallax with responses to Parallax's pending discovery requests.

1

Parallax initiated this suit on April 1, 2004, alleging that Victory infringed upon Parallax's trademark and trade dress rights in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125 (a)(1)(A), that Victory engaged in false advertising in violation of Section 43(a)(1)(B) of the Lanham Act, and that Victory engaged in unfair competition and trademark infringement under the State of Indiana common law.  Parallax seeks damages and a permanent injunction against Victory from selling any infringing product.  For the following reasons, Parallax's Motion for Summary Judgment is GRANTED and the Motion to Strike Defendant's Answer is deemed MOOT.

## FACTUAL BACKGROUND[3]

Parallax is limited liability company, with its principal place of business in Puyallup, Washington and an office in Goodland, Indiana, that produces power supply units for the

---

On February 24, that motion was granted by Magistrate Judge Roger Cosbey, to whom this case is on partial referral.  In his Order granting the motion to compel, Judge Cosbey directed Parallax to file a separate motion for attorneys' fees, which Parallax did on March 9, 2005.  Judge Cosbey also, in that same Order, directed Victory to file any response to the motion for fees on or before March 21, 2005.  Victory failed to respond to that order of the court also.  Consequently, on March 28, 2005, Judge Cosbey entered an Opinion and Order granting the motion for fees filed by Parallax and ordered Victory to pay the sum of $1,224.00.  In addition to its failure to file responsive pleadings to the motion to compel or the motion for attorneys' fees, Victory also has failed to pay the amount ordered by the court.  In addition, on October 1, 2004, this court, ruling on a Motion for Expedited Issuance of Order to Show Cause filed by Parallax (in which Parallax alleged that Victory had violated the terms of the court's preliminary injunction issued on May 20, 2004) ordered Victory to pay a sanction of $1,500.00.  That sanction also remains unpaid.

[3] In a motion for summary judgment, the facts are viewed in a light most favorable to the non-moving party.  However, the consequences of failing to submit an appropriate factual statement in opposition to a motion for summary judgment are that the court "will assume that the facts as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy."  *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir. 1994).

recreational vehicle ("RV") industry. Parallax was formed on February 10, 2004, as a wholly owned subsidiary of Connecticut Electric & Switch Manufacturing Company ("Connecticut Electric") to receive the rights and assets of Parallax Power Components, LLC ("PPC"). Connecticut Electric purchased the rights and assets, including licensed trademarks, of PPC's entire line of RV power supply products and then assigned all of the purchased assets to Parallax so as to enter the RV power supply market.

Victory, principally located in California, manufactures, supplies, and sells a wide variety of electronic components which are specially manufactured to the specifications supplied by its customers. Victory's relationship with PPC dates from March 14, 2003 when Victory and PPC entered into strategic purchase agreement. Under the agreement, Victory agreed to manufacture RV power supply units for PPC, using PPC model/series numbers, and applying PPC labels including labels issued by Underwriters Laboratories, Inc. ("UL"). PPC would take delivery of the product from Victory, perform a number of quality control tests, and sell them to RV manufacturers.

Toward the end of 2003, the relationship between Victory and PPC began to sour. Victory claims that PPC began to fall behind in its payments to Victory and PPC claims that the product manufactured by Victory for PPC was of poor quality, requiring PPC to refurbish many of the units. PPC further claims that it sought to recover the refurbishing costs from Victory, but that Victory refused to pay those costs. Regardless, Victory terminated the strategic purchase agreement with PPC on October 20, 2003 and stopped shipping product to PPC. On November 22, 2003, PPC contacted and informed UL that Victory was no longer authorized to use PPC's

UL listing on Victory's products.  On December 18, 2003, Victory  filed suit in California against PPC for breach of contract, fraud, and deceit, among other charges.

When Victory terminated its manufacturing agreement with PPC, it still had a sizeable inventory of finished RV power supplies ("PPC Inventory") and proceeded to try and sell this inventory directly to the RV manufacturers in an attempt to mitigate its damages.  Soon after Parallax purchased all of PPC's assets, Parallax learned that Victory was selling the PPC Inventory and sent a cease and desist letter to Victory, dated February 17, 2004, wherein Parallax informed Victory that it had purchased the assets of PPC and requested that Victory stop selling any product bearing PPC trademarks.  In a letter dated February 20, 2004, Victory responded that it would not stop selling the PPC inventory but would make efforts to remove any Parallax trademarks from the products.  Parallax continued to assert that Victory was selling product with Parallax trademarks affixed to them, which led to Parallax filing the present action seeking a permanent injunction to prevent Victory from selling any product that uses any PPC trademarks or trade dress.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  However, Rule 56(c) is not a requirement that the moving party negate his opponent's claim.  *Fitzpatrick v. Catholic Bishop of Chicago*, 916 F.2d 1254, 1256 (7th Cir. 1990).  Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery,

against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552-53 (1986). The standard for granting summary judgment mirrors the directed verdict standard under Rule 50(a), which requires the court to grant a directed verdict where there can be but one reasonable conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2511 (1986). A scintilla of evidence in support of the non-moving party's position is not sufficient to successfully oppose summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 2512; *In Re Matter of Wildman*, 859 F.2d 553, 557 (7th Cir. 1988); *Klein v. Ryan*, 847 F.2d 368, 374 (7th Cir. 1988); *Valentine v. Joliet Township High School District No. 204*, 802 F.2d 981, 986 (7th Cir. 1986). No genuine issue for trial exists "where the record as a whole could not lead a rational trier of fact to find for the nonmoving party." *Juarez v. Ameritech Mobile Communications, Inc.*, 957 F.2d 317, 322 (7th Cir. 1992) (quoting *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986)).

Initially, Rule 56 requires the moving party to inform the court of the basis for the motion, and to identify those portions of the "pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, which demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2553. The non-moving party may oppose the motion with any of the evidentiary materials listed in Rule 56(c), but reliance on the pleadings alone is not sufficient to withstand summary judgment. *Goka v.*

*Bobbitt*, 862 F.2d 646, 649 (7th Cir. 1988); *Guenin v. Sendra Corp.*, 700 F. Supp. 973, 974 (N.D. Ind. 1988); *Posey v. Skyline Corp.*, 702 F.2d 102, 105 (7th Cir.), *cert. denied*, 464 U.S. 960 (1983).

In ruling on a summary judgment motion the court accepts as true the non-moving party's evidence, draws all legitimate inferences in favor of the non-moving party, and does not weigh the evidence or the credibility of witnesses. *Anderson*, 477 U.S. at 249-251, 106 S. Ct. at 2511. However, "[i]t is a gratuitous cruelty to parties and their witnesses to put them through the emotional ordeal of a trial when the outcome is foreordained" and in such cases summary judgment is appropriate. *Mason v. Continental Illinois Nat'l Bank*, 704 F.2d 361, 367 (7th Cir. 1983).

Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law. *Id.* 477 U.S. at 248, 106 S. Ct. at 2510. Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute. *Id.* The issue of fact must be genuine. Fed. R. Civ. P. 56(c), (e). To establish a genuine issue of fact, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S. Ct. at 1356; *First National Bank of Cicero v. Lewco Securities Corp.*, 860 F.2d 1407, 1411 (7th Cir. 1988). The non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *Id.* A summary judgment determination is essentially an inquiry as to "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-252, 106 S. Ct. at 2512.

**DISCUSSION**

In its Complaint, Parallax contends, among other claims, that Victory infringed upon Parallax's trademark and trade dress rights in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125 (a)(1)(A).  "The Lanham Act protects registered marks from interference by state legislation, prevents unfair competition, and protects against fraud 'by the use of reproductions, copies, counterfeits, or colorable imitations of registered marks.' " *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 638 (7th Cir. 2001) (citing 15 U.S.C. § 1127).  To prevail on a trademark infringement and unfair competition claim under the Lanham Act, "a plaintiff must establish that (1) [its] mark is protectable, and (2) the defendant's use of the mark is likely to cause confusion among consumers."  *Id.* at 637 n. 8.

For an unregistered trademark, such term is protectable if it "specifically identifies and distinguishes one company's goods or services from those of its competitors."  *Platinum Home Mortgage Corp. v. Platinum Financial Group, Inc.*, 149 F.3d 722, 726 (7th Cir. 1998).  In order to designate a product or service, a mark must be distinctive.  Marks occupy a spectrum of inherent distinctiveness, starting at the bottom end with generic terms, such as "shoe" or "car," which commonly designate a type of good or service and do not identify the source of a particular product.  *Id.* at 727; *Mil-Mar Shoe Co. v. Shonac Corp.*, 75 F.3d 1153, 1156 (7th Cir. 1996).  Generic terms cannot qualify as trademarks; thus they receive no protection.  When the mark at issue is not federally registered, the burden is on the claimant to establish that it is not an unprotectable generic mark.  *Mil-Mar Shoe Co.*, 75 F.3d at 1156.

In the trademark context, consumer confusion concerns the "tendency of the mark to indicate the origin of the product in the eyes of the purchasing public." *Sullivan v. CBS Corp.*,

385 F.3d 772, 777 (7th Cir. 2004).  The likelihood of confusion can be proven without any

evidence of actual confusion, but if such evidence is available, it is entitled to substantial weight.

*Int.'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1090 (7th Cir. 1988).

The Seventh Circuit Court of Appeals has laid out seven factors to consider in assessing the

likelihood of consumer confusion:  1) the similarity between the marks in appearance and

suggestion;  2) the similarity of the products;  3) the area and manner of concurrent use or

promotion of the products;  4) the degree of care likely to be exercised by consumers;  5) the

strength of the complainant's mark;  6) any evidence of actual confusion;  and 7) the defendant's

intent (or lack thereof) to palm off its product as that of another.  *Eli Lilly & Co. v. Natural*

*Answers, Inc.*, 233 F.3d 456, 461-62 (7th Cir. 2000). "[A]lthough no one factor is decisive, the

similarity of the marks, the intent of the defendant, and evidence of actual confusion are the most

important considerations."  *Id.* at 462.

  In the present case, Parallax states that it has two (2) protectable trademarks as identified

in Exhibits A and B of its original complaint.  *See* Docket at 1.  The first trademark is federally

registered and The Lanham Act provides that trademarks registered on the principal federal

register are prima facie evidence of ownership of the trademarks and right to exclusive use. 15

U.S.C. § 1057(b), 1115(a) (1997).

  Shortly after this case was filed, the court granted a motion for preliminary injunction

that was filed by Parallax.  In the court's order of May 20, 2004, Victory and its officers and

agents were ordered to remove Parallax trademarks from the products Victory was selling,

remove model numbers and serial numbers from those products, and remove Underwriters

Laboratories serial numbers that were associated with Parallax from any products manufactured

8

after November 22, 2003.  Parallax has since contended, and continues to allege, that Victory

ignored the court's order and continued to sell products for sale with original labels and/or serial

numbers affixed.  Parallax states that rather than remove said labels or numbers, "Victory simply

placed a small Victory sticker over the Parallax trademarks in a manner that leaves Parallax

trademarks visible underneath."  Brief in Support of Motion for Summary Judgment, p. 11.

Parallax further contends that "Victory continued to manufacture new products during the

pendency of this lawsuit that are identical in appearance to Parallax's products without changing

the design of the labels, without placing Victory's own name on the products, and without

obtaining UL certification of the products."  *Id*.  Indeed, on October 4, 2004, the court held

Victory in contempt for violating the dictates of the preliminary injunction, and ordered Victory

to pay the sum of $1,500.00 to Parallax as a result of the violations.

   According to Parallax, "[t]he sale of the Unauthorized Inventory by Victory has led to the

erosion of goodwill associated with the PPC trademarks and trade dress.  To prevent further

erosion of the goodwill associated with the PPC name caused by the sale of defective power

supply equipment by Victory, Parallax now moves for summary judgment and requests a

permanent injunction that prevents Victory from selling any power supply products with

Parallax's trademarks or any product that looks substantially identical to the Parallax products."

*Id*., p. 12.  Parallax also seeks compensatory damages and attorneys' fees.

   Since Victory has failed to respond to Parallax's motion, despite having been given more

than ample time in which to do so, the facts presented by Parallax are, obviously, uncontested.

Nonetheless, so that the record is clear, Parallax is not seeking summary judgment on allegations

and assertions alone.  In support of its motion for summary judgment and its supplemental

motion, Parallax submitted numerous affidavits and exhibits.  Given Victory's failure to defend

the pending motions, it is not necessary for the court to discuss Parallax's evidence in great

detail.  However, the court notes that Parallax's motions and its requests for relief are supported

by, among other evidence, the evidence discussed briefly below.[4]

**Affidavits of Joe Brandon.**

Joe Brandon is the president of Parallax.  Brandon states in his affidavits that he has

personal knowledge that buyers of products sold by Victory "cannot distinguish the products that

are now being sold by Victory from the products sold by Parallax."  Plaintiff's Exhibit 3,

Affidavit of Joe Brandon, ¶ 11.  Brandon also states that based on his knowledge, "it is apparent

that Victory is making false representations to the buyers of the power supply products,

including representations that the power supply products were made to the PPC specifications . .

. ."  *Id.*, ¶ 12.  Brandon maintains that "[t]his causes confusion in the marketplace because the

buyers believe that these products that are being sold by Victory are identical to the Parallax

products based on the shape, design, and construction of the products, when in reality, they are

of inferior quality."  *Id.*  Brandon bases many of his statements on "a number of warranty calls"

from customers whom he states believed they had purchased Parallax products when in fact they

had purchased inferior products manufactured by Victory.  *Id.*, ¶¶ 13 and 14.

In his supplemental affidavit, Mr. Brandon presents facts concerning the sales Parallax

has lost as a result of Victory's conduct.  Plaintiff's Exhibit 17, Declaration of Joe Brandon.

Brandon also states that he believes that Victory was continuing to mislead customers in the RV

---

[4] A complete listing of the evidence submitted by Parallax in support of its motion for summary judgment appears in the court's docket entry number 105.

10

industry by selling products that appeared identical to Parallax's products as of the date of the filing of the supplemental affidavit on May 20, 2005. Finally, Brandon also claims that Victory's owner Ronald "Verruto is marketing power supply products under the name 'Xtreme Power Products.' I believe that Mr. Verruto is doing this to avoid any judgment against Victory." *Id.*, ¶ 10.

**Affidavits of Sandy Jones, LuAnn Gross, Jeff McCoy, and Dennis Tucker.**

In support of its motion Parallax also submitted other affidavits, including those of Sandy Jones, LuAnn Gross, Jeff McCoy, and Dennis Tucker, among others. Sandy Jones is a "sales associate and warranty manager for Parallax . . . ." [and was] "also a sales associate and warranty manager for . . . [PPC]." Plaintiff's Exhibit 1, Affidavit of Sandy Jones, ¶ 3. Jones states, in summary, that Victory sold products it manufactured to customers in the RV industry and misled those customers into believing the products were Parallax products. Jones also states that Victory was making false representations to customers regarding the equipment it was selling and that this equipment was inferior to the products manufactured by Parallax. *Id.*, ¶¶ 5-11.

LuAnn Gross is an operations manager for Parallax. Plaintiff's Exhibit 2, Affidavit of LuAnn Gross, ¶ 3. In her affidavit, Gross essentially reiterates the assertions set forth in the affidavit of Jones. Jeff McCoy is "the Engineering Manager for Parallax . . . ." Plaintiff's Exhibit 4, Affidavit of Jeff McCoy, ¶ 3. McCoy states that he has personal knowledge concerning customers' complaints about the performance (or lack of performance) of equipment manufactured and sold by Victory. McCoy states that customers believed the equipment was that of Parallax and that the mechanical problems associated with Victory equipment could seriously damage the reputation of Parallax. *Id.*, ¶¶ 10-12. Dennis Tucker is the owner of a

11

company known as Dart Sales and, "[i]n the course of the operation of Dart Sales, I act as a sales agent for Parallax . . . ." Plaintiff's Exhibit 5, Affidavit of Dennis Tucker, ¶ 3. Tucker states that he had personal knowledge that Victory was selling "products that look identical to the Parallax products . . . ." *Id.*, ¶ 6.[5]

All of the uncontroverted evidence presented (which in this case means *all* the evidence) indicates that Victory is liable to Parallax on all the claims presented in the Complaint.[6] Further, the evidence establishes that Victory has failed to comply with previous orders of this court, including not only previous orders to pay attorneys' fees but also the directives set forth in the court's order of May 20, 2004, granting Parallax's motion for preliminary injunction.

---

[5] In addition to these affidavits, Parallax also submitted numerous other affidavits, its Second Request for Admissions to Victory, and its Findings of Fact and Conclusions of Law to support the present motion. (Parallax served this request for admissions on Victory on November 10, 2004, and they were originally due back to Parallax on December 13, 2004. After numerous extensions and a stay of discovery, Victory was to respond to the request for admissions by January 17, 2005. Victory never responded to this discovery request and, consequently, the request for admissions are deemed admitted.) Parallax has also filed other documents in support of its motions, including: photographs of products made by both Victory and Parallax, verified by the second affidavit of Joe Brandon (Plaintiff's Exhibit 7); a spreadsheet purporting to calculate Parallax's actual lost sales revenue as a result of Victory's conduct (submitted under seal as an attachment to Plaintiff's Exhibit 17); and the affidavit of Vincent J. Allen, lead attorney for Parallax, who testifies with regard to Parallax's attorneys' fees (Plaintiff's Exhibit 18). The court has reviewed and considered all of the evidence submitted by Parallax, which is obviously submitted without objection by Victory. The evidence submitted by Parallax is more voluminous and detailed than the evidence that is specifically discussed herein. However, as the court stated at the outset, it is unnecessary to discuss all the evidence in any greater detail since it is all uncontested.

[6] Specifically, the claims asserted in Parallax's First Amended Complaint, filed on April 27, 2004, include the following: 1) violations of the Lanham Act and trade dress infringement pursuant to Section 43(a); 2) false advertising in violation of § 43(a)(1)(B) of the Lanham Act; and claims of common law trademark infringement and unfair competition. Plaintiff's First Amended Complaint, Docket at 23. Parallax seeks both compensatory and equitable remedies. *Id*.

USDC IN/ND case 1:04-cv-00118-WCL-RBC   document 116   filed 08/29/05   page 13 of 22

Accordingly, Parallax's motion for summary judgment must be granted and all that remains is to set forth the remedies to which Parallax is entitled.

Parallax is asking the court for damages in the amount of $638,798.95 "as a result of Victory's sales of infringing products from March to June of 2004."  Supplement to Plaintiff's Motion for Summary Judgment, p. 6.  Parallax states that this amount is based on "lost profits for the customers to which Parallax knows Victory was selling . . . ."  *Id.*  Parallax also claims that "Victory may have continued to sell products after June 2004, but because Victory will not respond to discovery requests, Parallax cannot at this time provide irrefutable evidence that sales were made after June of 2004."  *Id.*  Parallax also seeks "treble damages in the amount of $1,916,397.00 (three times Parallax's lost profits)."  *Id.* at pp. 4-5.  Parallax bases this request for treble damages on 15 U.S.C. § 1117(b), which provides that a court may award such damages based on the facts and circumstances of a particular case.  Parallax also seeks attorneys' fees in the amount of $243,084.00.  Plaintiff's Exhibit 18, Affidavit of Vincent J. Allen.  Parallax also seeks to be paid the sanction and attorneys' fee amounts previously ordered by the court, which total $2,724.00.  Parallax also requests that court costs be imposed on Victory.  Finally, Parallax seeks equitable relief in the form of a detailed permanent injunction against Victory and its principal owner, Ronald Verruto.[7]

**A.  Monetary Damages.**

Pursuant to the Lanham Act, a prevailing plaintiff is entitled to recover (1) defendant's

---

[7] In addition to the various equitable remedies enumerated in Parallax's pleadings, the Plaintiff also submitted to the court a proposed form of order setting forth eleven specific items of injunctive relief it is seeking.  Proposed orders submitted to the court are not docketed in the record of a case.

13

profits for violating the Act; (2) damages sustained by the plaintiff as a result of those violations; and (3) the costs of the action.  15 U.S.C. § 1117(a).  The court may also grant, depending on the facts underlying the violations, punitive damages not to exceed three times the plaintiff's actual damages.  *Id.*  As Parallax points out in its supplemental brief, "A plaintiff can prove his lost profits by showing the reasonable profits he would have made, but for the infringing sales made."  Supplement to Plaintiff's Motion for Summary Judgment, p. 5 (citing *Borg-Warner Corp. v. York-Shipley, Inc.*, 136 U.S.P.Q.  255, 259 (N.D. Ill. 1963)).  In addition, "'[p]rofits are awarded under different rationales including unjust enrichment, deterrents, and compensation.'"  *Id.* (quoting *Roulo v. Russ Berrie & Co.*, 886 F.2d 931, 941 (7th Cir. 1989), *cert. denied*, 493 U.S. 1075 (1990)).

As stated previously, Parallax contends that its actual damages, i.e., its lost profits, total $638,798.95.  Supplement to Plaintiff's Motion for Summary Judgment, p. 6; Exhibit 17, Declaration of Joe Brandon and Exhibit A attached thereto.  Parallax requests that the court award it this sum as its actual damages.  As also previously discussed, Parallax seeks treble damages for a total monetary damage award of $1,916,397.00.  The evidence presented establishes that Victory's actions, both before and after the filing of Parallax's original Complaint, as well as its actions and/or lack thereof following the entry of the court's Order granting the preliminary injunction, were grievous and willful.  The evidence also establishes that Victory's trademark and trade dress violations have damaged Parallax in terms of income, goodwill, and reputation in its industry.  Accordingly, pursuant to the court's authority as set forth in 15 U.S.C. § 1118, Parallax is awarded damages in the amount of $1,916,397.00.

**B. Attorneys' Fees and Sanctions.**

The court has already awarded Parallax attorneys' fees of $1,224.00 and an award of sanctions in the amount of $1,500.00.  Parallax contends, and the record does not reflect otherwise, that these amounts remain unpaid.  Accordingly, the court will award a judgment to Parallax in these amounts.

**C. Attorneys' Fees.**

Parallax has requested attorneys' fees in the amount of $243,084.00.  The affidavit of Vincent Allen (Plaintiff's Exhibit 18) provides a breakdown of the attorneys' fees being sought.  Obviously, Victory has not objected to the reasonableness of this fee amount.  Furthermore, after reviewing Mr. Allen's affidavit, the court finds that the amount of hours spent by Parallax's attorneys in this litigation, as well as the hourly rates charged by those various attorneys, are both reasonable.

The Lanham Act provides that a prevailing plaintiff may be entitled to attorneys' fees in "exceptional cases."  The relevant section of the Act states, in its entirety, as follows:

> When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, a violation under section 1125(a) or (d) of this title, or a willful violation under section 1125(c) of this title, shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action.  The court shall assess such profits and damages or cause the same to be assessed under its direction.  In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed.  In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount.  If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case.  Such sum in either of the above circumstances shall constitute

15

> compensation and not a penalty.  The court in exceptional cases may award
> reasonable attorney fees to the prevailing party.

15 U.S.C. § 1117(a).  The Act does not define the phrase "exceptional cases."  However, the

Seventh Circuit has addressed this very issue in the case of *Te-Ta-Ma Truth Foundation-Family*

*of URI, Inc. v. The World Church of the Creator*, 392 F.3d 248 (7th Cir. 2004).  In this case, the

Seventh Circuit was specifically interpreting and discussing the attorney fee provision of section

1117(a).  The court noted that "[t]he decision to award fees under § 1117(a) is within the district

court's sound discretion."  *Id*. at 257 (citing *BASF Corp. v. Old World Trading Co.*, 41 F.3d

1081, 1099 (7th Cir. 1994)).  The court first held that "a prevailing plaintiff need not show willful

infringement before a case may be declared exceptional[,]. . . ."  *Id*. at 261.  The court did find

that "a defendant's oppressive litigation conduct will support such a declaration."  *Id*.  The court

further elaborated that "cases may be declared exceptional if the losing party has engaged in

vexatious litigation conduct."  *Id*.  It stands to reason, then, that when an infringement is in fact

willful, the case should be deemed "exceptional" and the prevailing party may be awarded

attorneys' fees.

 In the present case, the evidence establishes that Victory's infringement actions were in

indeed deliberate and willful, at least once it was found in violation of the court's preliminary

injunction order.  Even if this were not the case, Victory's litigation conduct, if not quite

"oppressive," was at the very least uncooperative.  As already discussed in this order, Victory

has repeatedly ignored previous court orders and has failed to respond at all to the present

motions filed by Parallax.  So, in this instance, Victory is guilty of both willful infringement

practices *and* vexatious litigation conduct.  As a result, Parallax is entitled to recover its

attorneys' fees as provided in section 1117(a).

**D.  Costs of this Action.**

Section 1117(a) of the Lanham Act also provides that a prevailing plaintiff is entitled to recover the costs of any action brought as a result of violations of the Act.  Therefore, Parallax is entitled to recover its costs in this action.  Parallax has not submitted a bill of costs as part of its motion for summary judgment and does not set forth an amount of these costs in its briefing. Accordingly, Parallax is directed to submit a bill of costs within thirty (30) days of the date of this Order for the court's consideration, and shall serve a copy of the bill of costs upon the defendant.  Victory shall submit any objection to the bill of costs within fifteen (15) days after receipt of same from Parallax.[8]  The amount of the award of costs to Parallax will be determined by subsequent Order of the court.

**E.  Equitable and/or Injunctive Relief.**

Clearly, injunctive relief is paramount to Parallax in order to stop the bleeding caused by Victory's trademark and trade dress violations.  Parallax requests that the court "enter a permanent injunction in this case to prevent Victory, its successors and assigns, its officers, and any entity owned by them from additional infringement of Parallax's trademarks and trade dress and to prevent false representations by Victory that their products are UL certified when they are not."  Supplement to Plaintiff's Motion for Summary Judgment, p. 8.  Parallax then goes on to list several items of such relief which it maintains are necessary in order to prevent further

---

[8]  In his affidavit, Parallax attorney Vincent J. Allen explained that he attempted to serve a copy of the motion for summary judgment on Victory by sending a copy "via certified mail to . . . the address given by Mr. Verruto to the court during the hearing when Victory's counsel withdrew from this case."  Plaintiff's Exhibit 18, ¶ 18.  Mr. Allen provided documentation indicating that neither Mr. Verruto nor any other agent or representative of Victory ever claimed the certified mail.  Therefore, when the court directs Parallax to "serve" a copy of any bill of costs on Victory, it means that service should at least be attempted by the best means available.

violations by Victory and to remedy, to the extent that is possible, the harm already done by

Victory's previous violations.  The Lanham Act expressly provides that the court may enter

injunctive relief, and fashion such relief, in a manner consistent with the facts of the case.  15

U.S.C. § 1116.  Section 1116 states, in relevant part, as follows:

> The several courts vested with jurisdiction of civil actions arising under this
> chapter shall have power to grant injunctions, according to the principles of
> equity and upon such terms as the court may deem reasonable, to prevent the
> violation of any right of the registrant of a mark registered in the Patent and
> Trademark Office or to prevent a violation under subsection (a), (c), or (d) of
> section 1125 of this title.

15 U.S.C. 1116(a); See also, *Badger Meter, Inc. v. Grinnell Corp.*, 13 F.3d 1145, 1153 (7th Cir.

1994) (district court has considerable discretion in fashioning an injunction in response to

trademark or trade dress infringement) (citing *Soltex Polymer Corp. v. Fortex Industries, Inc.*,

832 F.2d 1325, 1329 (2d Cir.1987)).

    In the present case, the court finds that Victory has willfully and repeatedly, both before

the initiation of this suit and after, violated Parallax trademarks and trade dress.  It is abundantly

clear that a permanent injunction must issue in order to protect Parallax from this point forward,

to remedy past harm to Parallax's business goodwill and reputation, and to attempt to prevent

further violations by Victory.  Furthermore, the contumacious behavior of Victory in this

litigation for the past several months further demonstrates the need for detailed and forceful

injunctive relief.  Accordingly, the court adopts the items of equitable and injunctive relief

requested by Parallax.  The court grants Parallax's request for permanent injunctive relief and

hereby orders and directs Victory and/or its agents, successors or assigns, including Ronald

Verruto and/or any company owned or operated by him, as follows:

18

1) to physically remove (not merely cover) all labels or markings with any references or relation to Parallax, Parallax Power Components ("PPC"), or PPC from any and all products prior to selling or offering for sale those products, to include physically removing (not merely covering) any labels containing Parallax or PPC model numbers or series numbers, any labels containing Underwriters Laboratories ("UL") serial numbers or control numbers associated with Parallax or PPC, and any labels containing Federal Communications Commission references associated with Parallax or PPC, or other labels on the outside or inside of the products that could be used to trace the product back to Parallax Power Supply, LLC or Parallax Power Components, LLC;

2) to physically remove from the product all labels or references to Parallax, Parallax Power Components, or PPC from any product packaging, marketing materials, instruction manuals, or any other materials prior to selling or offering for sale any products;

3) to position in place of any labels removed from the products or associated materials, place new labels of a substantially different design format in conspicuous locations on the outside and inside of the product identifying the true source of the product prior to selling or offering for sale the products;

4) to cease manufacturing, shipping, selling, and/or offering to sell any power supply products for recreational vehicles having an appearance that is substantially the same as any of Parallax's products; cease manufacturing, shipping, selling, and/or offering to sell any products similar to 7300 series power supply products manufactured by Parallax, unless the products have a door of a substantially different design, shape, and color, such that a consumer of recreational vehicles could easily distinguish the power supply from a Parallax power supply when the labels

are removed from the products;

     5) to cease making any mention, orally or in writing, of Parallax or PPC or any Parallax model numbers or series numbers to anyone, including any representations that the products were made for Parallax or PPC, that the products are or were made pursuant to Parallax or PPC specifications, that the products were made under contract with PPC, that the products conform to the Parallax or PPC quality and performance standards, that the products are in any way associated with, or the equivalent of any Parallax product;

     6) to cease using any of the Parallax or PPC model numbers or any substantially similar variation thereof on any products, marketing, or advertising materials and to replace any reference to any such model number removed from an existing product with a Victory model number that does not contain the same series of numbers and/or characters used in the Parallax model number;

     7) to cease manufacturing, shipping, selling, and/or offering for sale any products having an Underwriters Laboratories or UL certification mark of any kind when that product is not properly UL certified, to include products that have not been tested by UL or have not been subject to follow-up service as well as products that do not comply with all of UL's requirements;

     8) to cease making any representations whether by markings on the products, orally, in correspondence or advertisement, or by any other means, that a product meets UL's requirements or is UL certified when in fact it is not, including representations that products manufactured without UL follow-up service are properly UL certified; and,

     9) to cease selling any products having UL marks or serial numbers that are associated

with Parallax or PPC and to use Victory's own UL certification marks and numbers and not numbers given by UL to Parallax or PPC.

**E. Motion to Strike Defendant's Answer.**

Again, Parallax also filed a motion to strike Victory's answer in this case.  Parallax contends that this remedy is necessary as a result of Victory's failure to comply with previous orders of the court, including orders directing Victory to pay attorneys' fees and sanctions, its failure to respond to discovery requests after having been ordered to do so by Magistrate Judge Cosbey, and its failure to even respond to the motion for summary judgment or motion to strike, despite having been granted additional time in which to do so.  Clearly, this behavior is serious and, as Parallax contends, demonstrates a blatant disregard for the Federal Rules of Civil Procedure and orders of this court.  Pursuant to Fed.R.Civ.P. 37(b)(2)C), the court has the authority to strike a party's pleadings for such behavior.  In the present case, however, the court deems the issue moot, since it would have no impact on the court's conclusions with regard to Parallax's motion for summary judgment or the court's determination of the compensatory and equitable relief to be awarded.

## CONCLUSION

For the reasons set forth in herein, the motion for summary judgment filed by Plaintiff Parallax is hereby GRANTED.  The motion to strike the Answer filed by Defendant Victory is deemed MOOT.  Parallax, as set forth above, is directed to submit a bill of costs within thirty (30) days of the date of this Order and Victory is directed to file any objection or other response to that bill of costs within fifteen (15) days of receipt of same from Parallax.

21

SO ORDERED.


Dated: August 29, 2005.


_____/s/   William C. Lee_____
William C. Lee, Judge
United States District Court